# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**F I L E D**
November 21, 2008

No. 07-60699

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

                                  Plaintiff-Appellee

v.

TOBY WAYNE GOSS

                                  Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before BARKSDALE, BENAVIDES, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

    Having been convicted for mortgage-lending fraud, Toby Wayne Goss contests only the loss calculation used in determining his advisory guidelines sentencing range for his mortgage-fraud scheme. At issue is whether, when computing that range, the fair market value of the collateral for each of the home-mortgage loans involved in the scheme should have been credited against loss to the victim. Applying a bright-line rule, the district court, except for Goss' loan, did not permit such deduction. AFFIRMED in PART; VACATED and REMANDED in PART.

No. 07-60699

I.

From about 1999 to 2002, Goss, a mortgage lender, conspired with others to commit mail and wire fraud by preparing and submitting false documents to induce lenders to make loans totaling over $2 million to 35 borrowers who may not have been qualified for them otherwise. Goss and his co-conspirators created false verifications of deposit and rent, IRS W-2 forms, and Social Security benefit letters and provided them to lenders to obtain the mortgages.

Additionally, they conspired to launder money by converting some of the mortgage-loan proceeds for their own use and benefit. An unindicted co-conspirator issued checks to fictitious creditors for some of the fraudulently obtained loans and forwarded them to Goss. Goss also received mortgage-broker fees for each fraudulently obtained loan.

Goss was indicted on 20 counts of fraud in the mortgage-lending process. The charges included: conspiracy to commit mail and/or wire fraud, in violation of 18 U.S.C. § 371; wire fraud, in violation of 18 U.S.C. § 1343; money-laundering conspiracy, under 18 U.S.C. § 1956(h); money-laundering promotion, in violation of 18 U.S.C. 1956(a)(1)(A)(i); engaging in financial transactions involving proceeds from a specified unlawful activity, in violation of 18 U.S.C. § 1957; and a criminal-forfeiture count, under 18 U.S.C. § 982. He pled guilty to counts one through 19 in March 2006.

Goss was sentenced under the 2001 version of the Sentencing Guidelines. Under Guideline § 2B1.1, the advisory sentencing-range calculation is dependent upon the amount of financial loss to the victims (here, the lenders). The calculated loss is to be the *greater* of actual or intended loss. U.S.S.G. § 2B1.1, app. n.2(A) (2001) ("Application Note 3(A)" in the current version of the guidelines).

On 20 October 2006, well in advance of the August 2007 sentencing hearing, the district court granted the Government's oral motion for the court

to rule on issues regarding the appropriate method for calculating Goss' sentence. The Government asserted, *inter alia*: the intended loss was more than the actual loss; and, for the intended loss, pursuant to *United States v. Morrow*, 177 F.3d 272 (5th Cir. 1999), the court should use the full value of the subject loans, excepting for Goss' loan, rather than deduct the value of the collateral.

In *Morrow*, the defendants had engaged in a scheme similar to the instant appeal, but that scheme involved loans to mobile-home owners. Our court held it was not clear error for the district court to find: the defendants were "consciously indifferent or reckless" concerning repayment of the loans; and, therefore, it was appropriate for the intended loss to include the full amount of the loans. *Id.* at 301.

Accordingly, for Goss' sentencing, the Government contended in district court that our circuit precedent recognizes that, when a "defendant has no ownership interest in or control over" collateral, the amount of the collateral need not be subtracted from the loan amount. *United States v. Sanders*, 343 F.3d 511, 526 (5th Cir. 2003). Goss countered: *Morrow* was distinguishable because it involved mobile homes, a type of collateral that is movable and depreciates quickly; on the other hand, the loans linked to Goss involved secure, immovable real property, known to appreciate in value; even if a borrower were to default, the lender would still own the collateral; and, in such a situation, the sentencing guidelines provided clear direction, stating that, "[i]n a case involving collateral pledged or otherwise provided by the defendant", loss shall be reduced by "the fair market value of the collateral *at the time of sentencing*". U.S.S.G. § 2B1.1 app. n.2(E)(2001) (emphasis added).

In support, Goss pointed to the Federal Sentencing Guidelines Handbook to contend that "collateral pledged or otherwise provided by the defendant" was not to be interpreted as limiting credits to collateral for which the defendant himself is pledgor. Roger W. Haines, Jr. et. al., *Federal Sentencing Guidelines*

*Handbook: Text and Analysis* 330-31 (2007 ed.) [hereinafter *Handbook*]. Goss further distinguished *Morrow* by again pointing to the *Handbook*, which states: "[I]mmovable collateral such as real estate properly pledged to the victim will *virtually always* be credited against loss . . . ." *Id.* at 387 (emphasis added).

As a result, Goss asserted: the loan amount represented neither actual nor intended loss; the intended loss was zero; and, as such, an actual-loss calculation should be employed. Therefore, Goss maintained, the correct valuation would be to subtract the collateral amount from the value of the loans and hold the difference to be the actual loss. And, according to Goss, because most of the loans were over-collateralized, the actual loss would ultimately be only the broker fees and improper payments Goss received.

At a hearing in July 2007, both sides urged their positions on the appropriate method of calculating loss amount. Afterward, the district court rejected Goss' position and agreed with the Government that the intended loss was the full value of the loans, except for Goss' personal loan.

On 24 August 2007, Goss was sentenced, *inter alia*, to 57 months imprisonment as to each of counts one through 19, to run concurrently. The basis for this sentence was reflected in the district court's 30 August 2007 order that the entire amount of the fraudulent loans was the appropriate amount of intended loss, applying a credit solely for the one loan for which Goss was also the borrower. It concluded the full amount of the loans was the financial risk engendered by Goss' conduct and, as such, the law of this circuit counseled intended loss was the appropriate calculation. It further determined that, other than his loan, Goss had no ownership interest or control over the collateral and, in such situations, circuit precedent compelled a ruling that no credit or offset for the value of the collateral was available.

## II.

Although post-*Booker*, the Sentencing Guidelines are advisory only, and an ultimate sentence is reviewed for reasonableness under an abuse-of-discretion standard, the district court must still properly calculate the guideline sentencing range for use in deciding on the sentence to impose. *Gall v. United States*, 128 S. Ct. 586, 596 (2007). In that respect, its application of the guidelines is reviewed *de novo*; its factual findings, only for clear error. *E.g., United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008); *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005).

Goss contends: the district court erred by not deducting the collateral value in its intended-loss calculation, resulting in an inflated loss amount for the mail and wire fraud charges ("group one"), and thus an inflated offense level. Additionally, he asserts: the inflated loss amount for the group-one charges resulted in an inflated offense level for his money-laundering charges ("group two"), because the offense level for the group-two charges was dependent upon a proper calculation of the group-one offense level. U.S.S.G. § 2S1.1(a)(2).

Goss does not premise his challenge on the district court's factual findings; instead, he challenges its ruling that the collateral value of the loans should not be deducted for its advisory-guidelines loss calculation. Because Goss' contentions are based upon the court's *application* of the guidelines, our review is *de novo*. *Cisneros-Gutierrez*, 517 F.3d at 764.

In reviewing *de novo* the district court's application of the advisory guidelines, the issue at hand is whether, for each loan, the collateral value should be deducted from the loan's total value. In making this determination, we must first decide whether an actual or intended-loss framework is appropriate for calculating the victims' losses.

A.

As noted, the guidelines direct that, when assessing the financial losses suffered, the amount to be used should be the *greater* of "actual loss" or "intended loss". U.S.S.G. § 2B1.1 app. n.2(A). Actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense". U.S.S.G. § 2B1.1 n.2(A)(i). Intended loss, on the other hand, "(I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)". U.S.S.G. § 2B1.1 n.2(A)(ii). Moreover, to determine intended loss, actual, not constructive, intent is considered. *Morrow*, 177 F.3d at 301.

Section 2B1.1 of the advisory guidelines provides the starting point in determining the appropriate loss calculation. *See* U.S.S.G. § 2B1.1. For the applicable 2001 version of the guidelines, the following is provided by that section's Application Note 2(E)(ii) (which, as noted *supra*, has since been re-labeled "Application Note 3(E)(ii)"): "In a case involving collateral pledged or otherwise provided by the defendant, [loss shall be reduced by] the amount the victim has recovered at the time of sentencing from disposition of the collateral, *or if the collateral has not been disposed of by that time*, [loss shall be reduced by] the fair market value of the collateral *at the time of sentencing*." U.S.S.G. § 2B1.1 app. n.2(E)(ii) (emphasis added).

Regarding whether to credit such collateral when calculating loss, the phrase "by the defendant", as it appears in the application note, is further clarified in the Federal Sentencing Guidelines Handbook.[*] It explains: "In light

---

[*] Of course, our considering the *Handbook* does not mean it is more than a secondary authority. As many courts have done, we treat the *Handbook*, in this instance, as a persuasive aid; and we refer to it to assist with our independent interpretation of the advisory guidelines.

of the language of § 2B1.1, . . . the government might argue that a defendant is not entitled to credit for pledged collateral unless he himself was the pledger of the collateral. However, this interpretation of the Application Note 2(E)(ii) would be contrary to . . . the Commission's generally stated net loss approach, and to common sense." *Handbook* at 330. Additionally, as noted, the Handbook states that "immovable collateral such as real estate properly pledged to the victim will virtually always be credited against loss . . . ." *Id.* at 387.

An examination of these materials, without more, strongly suggests that, for loss-calculation purposes, loan collateral is to be deducted from the total value of the loan. *See Handbook* at 330 (noting the guidelines' general "net loss approach"; *c.f. United States v. Klein*, 543 F.3d 206 (5th Cir. 2008) (reducing the amount of loss by the fair-market value of the services rendered, pursuant to U.S.S.G. § 2B1.1). Our court has recognized, however, that there are situations where the deduction of collateral may *not* provide the most fair loss assessment. *See Morrow*, 177 F.3d at 301; *United States v. Tedder*, 81 F.3d 549, 551 (5th Cir. 1996). For example, as discussed below, if a defendant's intent to avoid repaying a loan is sufficiently clear, and recovery of the collateral is problematic, these factors might preclude deduction of the collateral involved.

As discussed *supra*, this was the situation in *Morrow*: the collateral consisted of movable, highly depreciable property (mobile homes); and the underlying facts made the defendants' lack of control over the collateral an item of concern. Our court noted there was neither evidence of intent to cause the loss of the entire loan nor evidence of intent to repay the loan. It determined, however, that the district court had *not* committed clear error in using an

---

*See, e.g., United States v. Hernandez*, 457 F.3d 416, 423 (5th Cir. 2006). *See also United States v. Campa*, 529 F.3d 980, 1017 (11th Cir. 2008); *United States v. Gann*, 58 F. App'x 792, 799 (10th Cir. 2003); *United States v. Haynes*, 216 F.3d 789, 799 (9th Cir. 2000); *United States v. Cianci*, 154 F.3d 106, 113 (3d Cir. 1998).

intended-loss calculation after finding the defendants: did not have control over whether the mobile home owners would repay the loans; and were "consciously indifferent or reckless" about those owners' repayment. 177 F.3d at 301-02. For these reasons, the collateral was not required to be deducted. *Id.*

Similarly, in *Tedder*, the defendant provided false social-security numbers to his clients so they could obtain vehicle and mortgage loans. Our court found it highly unlikely that the defendant *intended* that these loans be repaid, and, thus, the loss calculation in that case included the full amount of the loans. *Tedder*, 81 F.3d at 551. *See also United States v. Hill*, 42 F.3d 914 (5th Cir. 1995) (holding that inclusion of the full loan amount in the loss calculation was appropriate when the facts indicated the defendant *intended* a loss with respect to the face value of the securities at issue).

Viewing the concerns regarding repayment of loans (and/or recovery of collateral) that have arisen in cases like *Morrow*, *Tedder*, and *Hill*, and in the light of the direction provided by the advisory guidelines, it becomes apparent that whether to deduct collateral—whether to employ an actual or an intended-loss calculation—will depend upon the specific facts at hand. We must therefore consider the instant specific facts to determine whether actual or intended loss is the appropriate method of calculation.

In that regard, although there is neither evidence that Goss intended to cause the loss of the loans, nor evidence of his intent that they be repaid, we cannot agree that, as in *Morrow*, Goss was so "consciously indifferent or reckless" about the repayment of the loans as to impute to him the intention that the lenders should not recoup their loans, whether by payment from the borrowers or through recovering the collateral in the event of default. *Id.* This determination rests in large measure on the direction provided by the guidelines' commentary, as well as the common-sense notion that, generally, the value of real, immovable property will be recoverable should the owner default.

Along this line, we note that, as was the situation in *Morrow*, Goss did not have control over the repayment of these loans to third parties. Nevertheless, we find that factor to be less important when determining the appropriate loss calculation in a case involving immovable real property, because part, if not all, of the loan value was more likely recoverable. Accordingly, in this instance, actual loss (vice intended loss) is the appropriate method of calculation.

B.

Obviously, application of an actual-loss method in this instance does not necessarily mean that the full collateral value for each loan will be deducted in every instance. An inflexible, bright-line rule for all of the loans at issue does not ensure the victims' financial losses will be accurately assessed; and, therefore, it is necessary to examine each loan individually in order to determine the fair market value of the loan's collateral and whether it should be deducted.

This loan-by-loan inquiry will allow the district court to properly determine how to treat the collateral, for each loan at issue, in order to arrive at the most accurate assessment of the lenders' losses. Needless to say, this loan-by-loan inquiry is fact-intensive, and should be shaped by weighing the appropriate factors in determining, at the time of sentencing, what, in the event of a default, would be the fair market value of any recovered collateral.

This inquiry is likely to touch upon many of the issues presented in earlier cases. In this instance, factors that may impact the likelihood of recovery, the fair market value of the property, or both, include: the collateral is immovable; whether third parties exercise control over the collateral; whether, in the event of default, the collateral is, or might be, damaged before recovery; whether the collateral's value was appraised or assessed at the time of sentencing; and whether there are financial or practical risks inherently associated with the collateral. (Of course, this list is not exhaustive; and no one factor is controlling.

likelihood of recovery or the fair market value of the property.)

It goes without saying that, notwithstanding the fact-intensive nature of this prescribed inquiry, the district court cannot achieve absolute certainty in determining the lenders' losses. Instead, "[t]he court need only make a *reasonable estimate* of the loss". *United States v. Holbrook*, 499 F.3d 466, 468 (5th Cir. 2007) (matching the language of both U.S.S.G. § 2B1.1 app. n.2(C) (2001) and U.S.S.G. § 2B1.1 app. n.3(C) (2007)) (emphasis added) (internal quotation marks omitted). Accordingly, because "[t]he sentencing judge is in a unique position to assess the evidence and *estimate* the loss based upon that evidence . . . the court's loss determination is entitled to appropriate deference". *Holbrook*, 499 F.3d at 468 (emphasis added).

On appeal, the parties fail to address whether, at re-sentencing, the district court's loss calculation should be based on the fair market value of the collateral at the time of the original sentencing or, rather, at the time of re-sentencing. Obviously, because of market fluctuations, as vividly demonstrated currently, this may be an important distinction. We, however, do *not* decide a blanket rule. Instead, we conclude, only for this appeal and based on the facts at hand, that focusing on the value at the time of the initial sentencing best comports with the guidelines' plain language. *See* U.S.S.G. § 2B1.1, app. n.2(E)(ii) (prescribing use of "the fair market value of the collateral *at the time of sentencing*") (emphasis added); *see also United States v. Erpenbeck*, 532 F.3d 423, 435 (6th Cir. 2008) (on appeal from re-sentencing, holding that the district judge, at that re-sentencing, properly followed the Guidelines by using the fair market value of the collateral at the time of the *original* sentencing, when appellant had provided no relevant information about the change, if any, in the value of collateral at the time of re-sentencing). In this instance, Goss should be neither penalized nor rewarded for whatever effects the time spent on appeal

determining the appropriate method of calculation may have on the fair market value of the collateral. Moreover, counsel for both parties suggested at the district court's July 2007 hearing, prior to the initial sentencing, that then-current appraisals or assessed values existed for the properties. On remand, those values may aid the district court in making the requisite reasonable loss calculation.

As discussed *supra*: the relevant losses in the case at hand are *actual* losses; and, on remand, the district court shall conduct a loan-by-loan inquiry to explore the factors discussed *supra*, as well as others it deems relevant. After making the necessary findings of fact with respect to the collateral's likelihood of recovery and its fair market value at the time of the initial sentencing, the district court, for its loss calculation, should: deduct the fair market value of collateral likely to be recovered from the total value of the loans, using the court-determined value of that collateral; and, obviously, should not deduct the value of collateral not likely to be recovered. Once the district court, on remand, has considered the treatment of the collateral, it may, of course, also need to recalculate the affected offense levels.

### III.

For the foregoing reasons, the conviction is AFFIRMED; we VACATE and REMAND for re-sentencing consistent with this opinion.